UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENALDO GUERRIER,<br><br>                              Plaintiff,<br><br>    -against-<br><br>NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, MICHAEL WOOD, CITY OF NEW YORK, P.O. ERNESTO CASTRO (SHIELD NO. 15685), and NEW YORK CITY POLICE OFFICERS "JOHN DOE" #1-10,<br><br>                              Defendants. | 23 Civ. 05517<br><br>**FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND** |

## INTRODUCTORY STATEMENT

1. This case is about the horrific and unjustified criminal assault of Plaintiff Renaldo Guerrier, and the elaborate web of lies told by government employees trying to cover up their actions. On December 20, 2022, an inadequately trained Metropolitan Transportation Authority/New York City Transit Authority ("MTA/NYCTA") collection agent by the name of Michael Wood intentionally and without justification shot Mr. Guerrier in the chest. New York City Police Officers then deprived Plaintiff of his Fourteenth Amendment due process rights by chaining him to a Brooklyn Methodist Hospital bed for 23 days, watching as he suffered in critical condition post-surgery.

2. On the night of December 20, 2022, Mr. Guerrier was traveling on the southbound R train and engaged in conversation with one or both of MTA/NYCTA Agent Wood and MTA/NYCTA Equipment Maintainer Liang Yingsheng. The conversation continued as Mr. Guerrier and the MTA employees all exited the train at Union Street Station in Park Slope, Brooklyn, where Mr. Guerrier was ultimately shot.

1

3. Contradicting themselves and reality, Defendants put forth various justifications for shooting Mr. Guerrier, falsely claiming that Mr. Guerrier: brandished a weapon; threatened to take MTA/NYCTA Agent Wood's weapon; and/or was attacking MTA/NYCTA Equipment Maintainer Yingsheng. Mr. Guerrier did none of these things and was without a weapon and yards away from MTA/NYCTA Agent Wood when he was shot. Wearing an MTA uniform and acting in his official capacity and under color of state law, Defendant Wood with willful indifference used excessive force to violate Mr. Guerrier's constitutional rights.

4. Once at Brooklyn's Methodist Hospital with a critically injured Mr. Guerrier, Defendant P.O. Ernesto Castro and Defendants New York City Police Officers "John Doe" #1-10 handcuffed Mr. Guerrier to his hospital bed for over three weeks, violating his clearly established substantive due process rights.

5. Mr. Guerrier brings this action under 42 U.S.C. § 1983 and related state laws seeking declaratory relief, compensatory and punitive damages, and attorneys' fees under 42 U.S.C. § 1988 for Defendants' violation of rights afforded by the United States Constitution and the laws of the State of New York.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 1343(3).

7. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Prior to the commencement of this action, and within ninety (90) days of the occurrence described herein, Plaintiff served a notice of claim, in writing, upon Defendants City of New York and MTA/NYCTA in accordance with Section 50(e) of the General Municipal Law

of the State of New York.

9. More than ninety (90) days passed between the service of Plaintiff's notice of claim and the commencement of this action, and during such period Defendants City of New York and MTA/NYCTA have, to date, neglected and refused to pay said claim or adjust same.

10. Hearings pursuant to New York General Municipal Law Section 50-H took place on July 6 and September 6, 2023.

11. This action was commenced within one year and ninety (90) days of the occurrence complained of herein that gave rise to Plaintiff's injuries, and Plaintiff has complied with all of the prerequisites for bringing this action.

12. As the unlawful conduct complained of herein occurred within, and Defendants maintain offices within, the Eastern District of New York, venue is proper in this District pursuant to 29 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

13. Plaintiff Renaldo Guerrier is a citizen of the United States and a resident of the City of New York, County of Kings, and State of New York.

14. Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation of the State of New York and has the responsibility of developing, implementing and operating a unified mass transportation policy and system for the City of New York and various surrounding counties.

15. The MTA carries out its responsibilities by and through its subsidiaries and affiliates, one of which is the New York City Transit Authority ("NYCTA"). The MTA by and through the NYCTA operates, controls and is responsible for the acts and omissions that occur on and throughout the City of New York subway system. It is also responsible for hiring,

screening, training, supervising, controlling and disciplining the people employed by the MTA and/or NYCTA.

16. Defendant City of New York is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and as such is responsible for the practices, policies, and customs of the New York City Police Department, as well as the hiring, screening, training, supervising, controlling and disciplining of those persons employed by the New York City Police Department.

17. Defendant Michael Wood, sued herein in his individual capacity, is currently and was, at all times hereafter mentioned, employed by the MTA/NYCTA as a Transit Revenue Collector or Collecting Agent and was acting within the scope of his employment.

18. Defendant P.O. Ernesto Castro, Shield No. 15685, sued herein in his individual capacity, is currently and was, at all times hereafter mentioned, employed by the City of New York as a Police Officer and was acting within the scope of his employment.

19. Defendants New York City Police Officers "John Doe" #1-10 ("'John Doe' Defendants #1-10"), sued herein in their individual capacities, are currently and were, at all times hereafter mentioned, employed by the City of New York as police officers and were acting within the scope of their employment.

20. All Defendants, either personally or by and through their employees, were at all times material to this incident acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or the City of New York, and Defendant City of New York and MTA/NYCTA's employees were also acting within the scope of and in furtherance of their employment.

21. At all times material to this complaint, Defendants MTA, NYCTA, and Agent

4

Wood (collectively, "the MTA/NYCTA Defendants") acted jointly and in concert with each other. Each Defendant had the opportunity and the duty to protect Plaintiff from the unlawful actions of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing Plaintiff's injuries.

22. At all times material to this complaint, Defendant City of New York and "John Doe" Defendants #1-10 (collectively, "the City of New York Defendants") acted jointly and in concert with each other. Each Defendant had the opportunity and the duty to protect Plaintiff from the unlawful actions of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing Plaintiff's injuries.

## FACTUAL ALLEGATIONS

*The Players and Their Lack of Training and Supervision*

23. Most, if not all, NYC subway stations have MetroCard vending machines.

24. The MTA/NYCTA employs approximately 274 revenue collecting agents who assist in the collection, transportation and delivery of revenue from MTA/NYCTA facilities.

25. As part of their job duties, revenue collecting agents are responsible for serving as armed security guards to the MTA/NYCTA equipment maintainers who repair and maintain the MetroCard vending machines.

26. Revenue collecting agents, like Defendant Wood, must satisfy certain license and experience requirements to hold the job, such as possessing a valid "carry" handgun license issued by the New York City Police Department or a jurisdiction in New York State, and have a certain amount of experience as an armed guard, peace officer, security guard or military police officer.

27. Upon information and belief, revenue collecting agents like Defendant Wood are

5

trained through the New York City Police Department about the operation and use of their handgun for one week at the beginning of their employment as revenue collecting agents.

28. Upon information and belief, the MTA/NYCTA provides little if any continuing training of revenue collecting agents during their employment.

29. Upon information and belief, the MTA/NYCTA provides little if any training to inform revenue collecting agents when, if at all, it is appropriate and lawful to use their weapons to impose deadly physical force.

30. Upon information and belief, the MTA/NYCTA provides little if any training to revenue collecting agents on how to deescalate a contentious or hostile situation with a member of the public without using deadly physical force.

31. Upon information and belief, the MTA/NYCTA provides little if any training to revenue collecting agents on how to communicate with members of the public who appear to be or exhibit characteristics suggesting they are emotionally or mentally disturbed.

### *What Happened – Train Station*

32. On December 20, 2022, at approximately 9:00 p.m., Mr. Guerrier was traveling southbound on the R train, as were Defendant Wood and his MTA/NYCTA co-worker, Equipment Maintainer Liang Yingsheng.

33. Defendant Wood and Mr. Yingsheng were wearing their uniforms with MTA patches. Wood is and was employed as a revenue collecting agent and Yingsheng is and was employed as an equipment maintainer.

34. The three men engaged in conversation which, upon information and belief, continued when they exited the R train at the Union Street station in Park Slope, Brooklyn.

35. While in the Union Street station, Defendant Wood, acting in his official

capacity as a revenue collecting agent, drew his firearm and from a distance shot Mr. Guerrier in the chest without legal justification.

36. Mr. Guerrier was not in possession of a firearm.

37. Mr. Guerrier did not physically attack Defendant Wood and/or Mr. Yingsheng.

38. Mr. Guerrier did not attempt to remove or take Defendant Woods' firearm from his person.

39. Mr. Guerrier was critically injured, hospitalized for weeks, surgically operated on and forced to return to the hospital on at least one occasion after he was released due to the gunshot wound caused by Defendant Wood's outrageous, horrific and unreasonable actions.

40. Neither Defendant Wood nor Mr. Yingsheng was physically injured as a result of the within described incident.

41. EMS reported to the scene and transported a bleeding and critically injured Mr. Guerrier to Brooklyn Methodist Hospital in Park Slope, Brooklyn.

*What Happened – Brooklyn Methodist Hospital*

42. Once at the hospital, Mr. Guerrier was taken to the emergency room and urgently treated for the gunshot wound directly caused by Defendant Wood.

43. Mr. Guerrier suffered substantial injuries to his liver and pancreas.

44. Surgery was performed on his stomach and abdomen area to remove the bullet fired by Defendant Wood.

45. Mr. Guerrier was in the hospital for 23 days from December 20, 2022, to January 12, 2023, and was handcuffed or chained to his hospital bed by his arm and his leg for the duration without justification.

46. Defendant P.O. Ernesto Castro, on one or more days including December 30,

2022, was one of the police officers who handcuffed or chained Mr. Guerrier to his hospital bed and held him in custody.

47. Mr. Guerrier did not pose a flight risk or a security risk, was physically weakened by his injuries, and was constantly guarded by one or more police officers for the duration of his hospital stay.

48. Although Mr. Guerrier had an open warrant for failure to pay a fine for Driving While Intoxicated/Impaired from two years earlier, Defendant City of New York, by and through its Police Officers "John Doe" #1-10, without any legally justifiable reason, kept Mr. Guerrier handcuffed to his hospital bed for the entire time he was hospitalized.

49. Mr. Guerrier's injuries, suffered due to the aforementioned shooting, continued after he was released from the hospital on January 12, 2023, causing him to return to Brooklyn Methodist Hospital on January 23, 2023, where he remained until January 28, 2023.

50. Mr. Guerrier was not handcuffed to his hospital bed during this five-day period from January 23 – 28, 2023.

51. At no time during the course of this incident did Mr. Guerrier engage in any activity which was illegal, unlawful, suspicious, or would otherwise have reasonably drawn the attention or suspicion of the police, and more particularly Defendants herein.

52. Mr. Guerrier was not arrested for any of his actions while on the R train or in the Union Street station with Defendant Wood or Mr. Yingsheng.

53. At no time during the course of this incident did Mr. Guerrier engage in any activity which would have required, necessitated or warranted Defendant Wood to shoot him or Defendants "John Doe" #1-10 to handcuff him to his Brooklyn Methodist Hospital bed for 23 days.

54. As a direct and proximate result of Defendants' actions as described herein, Mr. Guerrier has suffered and continues to suffer serious and substantial permanent physical injuries.

55. As a direct and proximate result of Defendants' actions as described herein, Mr. Guerrier has suffered and continues to suffer serious and substantial mental and emotional trauma, deprivation of liberty, ridicule, scorn, humiliation, embarrassment and extreme shame.

**FIRST CAUSE OF ACTION: FEDERAL CIVIL RIGHTS**
**Use of Excessive Force**
**(Defendant Wood)**

56. Mr. Guerrier realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 of this complaint.

57. As a direct and proximate result of Defendant's acts and omissions on December 20, 2022, in which he acted under color of state law, Mr. Guerrier was deprived of rights, privileges and immunities secured to him by the Constitution and the laws of the United States, including, but not limited to, his clearly established substantive due process right under the Fourteenth Amendment to be free from the use of excessive and unreasonable force.

58. Defendant Wood acted with malice or with reckless disregard for whether Mr. Guerrier's rights would be violated by his actions.

59. As a result of the aforesaid violation of Mr. Guerrier's rights, he sustained serious and permanent physical injuries and suffered emotional pain and suffering.

60. Mr. Guerrier seeks compensatory and punitive damages from Defendant Wood.

**SECOND CAUSE OF ACTION: *MONELL***
**Use of Excessive Force**
**(Defendants MTA and NYCTA)**

61. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60 of this Complaint.

9

62. Prior to December 20, 2022, the MTA/NYCTA Defendants developed and maintained policies and customs which caused the deprivation of Mr. Guerrier's constitutional rights.

63. Prior to December 20, 2022, the responsible policy making officials of the MTA/NYCTA Defendants knew, or in the exercise of reasonable care should have known, that individual collection agents like Defendant Wood lacked the training, experience and supervision in how to treat individuals exhibiting signs of emotional distress and/or alcohol intoxication and when to use deadly physical force, thereby violating the clearly established constitutional rights of Mr. Guerrier. Defendants' failure to train collection agents amounts to deliberate indifference to the constitutional rights of New Yorkers like Mr. Guerrier.

64. Despite knowledge of the aforesaid pattern and practice, the MTA/NYCTA Defendants failed to properly investigate this conduct, and failed to supervise, train and discipline the agents and officers of the MTA/NYCTA.

65. The MTA/NYCTA Defendants adopted a "hands off" policy or custom with regard to such illegal and unconstitutional acts committed by their agents, which encouraged the individual MTA/NYCTA Defendant in this case, Defendant Wood, to believe that he could violate the clearly established constitutional rights of Mr. Guerrier with impunity and with the explicit or tacit approval of Defendants MTA and NYCTA, in violation of 42 U.S.C. § 1983.

66. As a result of the foregoing, Mr. Guerrier sustained the damages and injuries previously described, and seeks compensatory damages from the MTA/NYCTA.

**THIRD CAUSE OF ACTION: FEDERAL CIVIL RIGHTS**
**Substantive Due Process**
**(Defendant Castro, "John Doe" Defendants #1-10)**

67. Mr. Guerrier realleges and incorporates by reference the allegations set forth in

paragraphs 1 through 66 of this complaint.

68. As a direct and proximate result of the acts and omissions of Defendant Castro and "John Doe" Defendants #1-10 on December 20, 2022 through January 12, 2023, in which they acted under color of state law, Mr. Guerrier was deprived of rights, privileges and immunities secured to him by the Constitution and the laws of the United States, including, but not limited to, his clearly established substantive due process rights under the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt, to be free from excessive bodily restraint, and to be free from cruel and inhumane punishment.

69. Defendant Castro and "John Doe" Defendants #1-10 acted with malice or with reckless disregard for whether Mr. Guerrier's rights would be violated by their actions.

70. The actions of Defendant Castro and "John Doe" Defendants #1-10—shackling a human being by two limbs to the bed of a hospital in which he was receiving critical life-saving care—had no legitimate, non-punitive government purpose and simply shock the conscience of any rational person.

71. As a result of the aforesaid violation of Mr. Guerrier's rights, he sustained serious and permanent physical injuries, emotional pain and suffering, and was deprived of his liberty.

72. Mr. Guerrier seeks compensatory and punitive damages from Defendant Castro and "John Doe" Defendants #1-10.

### FOURTH CAUSE OF ACTION: *MONELL*
### Substantive Due Process
### (Defendant City of New York)

73. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 72 of this complaint.

11

74.     Prior to December 20, 2022, Defendant City of New York developed and maintained policies and customs which caused the deprivation of Mr. Guerrier's constitutional rights; to wit: overinclusive policies or customs requiring the indiscriminate use of restraints against hospital detainees, AND/OR failure to train police officers like Defendant Castro and "John Doe" Defendants #1-10 in how to secure, care for and process pretrial hospital detainees (particularly victims of municipal misconduct and/or individuals injured during the course of a police incident) without violating their substantive due process rights.

75.     Prior to December 20, 2022, the responsible policy making officials of Defendant City of New York knew, or in the exercise of reasonable care should have known, that individual police officers like Defendant Castro and "John Doe" Defendants #1-10 lacked the training, experience and supervision described above.  Defendant's failure to train, monitor and supervise its police officers amounts to deliberate indifference to the constitutional rights of New Yorkers like Mr. Guerrier.

76.     Despite knowledge of the aforesaid pattern and practice, Defendant City of New York failed to properly investigate this conduct, and failed to supervise, train and discipline the agents and officers of the City of New York.

77.     Defendant City of New York adopted a "hands off" policy or custom with regard to such illegal and unconstitutional acts committed by their agents and police officers, which encouraged the individual Defendants in this case, Defendant Castro and "John Doe" Defendants #1-10, to believe that they could violate the clearly established constitutional rights of Mr. Guerrier with impunity and with the explicit or tacit approval of Defendant City of New York, in violation of the Fourteenth Amendment.

78.     The actions of Defendant Castro and "John Doe" Defendants #1-10 and the City

of New York—shackling a human being by two limbs to the bed of a hospital in which he was receiving critical life-saving care—had no legitimate, non-punitive government purpose and simply shock the conscience of any rational person.

79. As a result of the foregoing, Mr. Guerrier sustained the damages and injuries previously described, and seeks compensatory damages from Defendant City of New York.

**FIFTH CAUSE OF ACTION: TORT**
**Negligence**
**(Defendants MTA/NYCTA and Defendant Wood)**

80. Mr. Guerrier realleges and incorporates by reference the allegations set forth in paragraphs 1 through 79 of this complaint.

81. Defendant Wood was negligent in the following respects:

   a. Failing to use the proper standard of care in stopping and questioning Mr. Guerrier; in investigating any alleged wrongdoing of Mr. Guerrier; in failing to refrain from using unnecessary, excessive and deadly force during the course of the incidents described herein, and in that he failed to recognize that Mr. Guerrier posed no threat to him and should not have been subject to the above-described treatment including shooting him in the stomach;

   b. Failing to use reasonable care, prudence and diligence in managing, caring for, and protecting Mr. Guerrier;

   c. Failing to act with that degree of reasonable care and diligence that the circumstances then and there existing required, and which would have prevented the happening of the occurrence complained of herein.

82. Defendants MTA/NYCTA were negligent in the following respects:

   a. Failing to use the proper standard of care to prevent Defendant Wood from

13

       engaging in the activity described herein;

   b. Failing to use reasonable care, prudence and diligence in managing, caring for, and protecting Mr. Guerrier while he was traveling on the MTA/NYCTA subway;

   c. Failing to properly train, supervise and/or discipline Defendant Wood concerning, among other situations, how to treat individuals who may be exhibiting signs of being emotionally disturbed and/or alcohol intoxication;

   d. Failing to act with that degree of reasonable care and diligence that the circumstances then and there existing required, and which would have prevented the happening of the occurrence complained of herein.

83. The occurrence of December 20, 2022 was due solely to the negligence and carelessness of the MTA/NYCTA Defendants and Defendant Wood.

84. As a result of Defendants' negligence, Mr. Guerrier sustained the damages and injuries previously described above, and seeks compensatory damages from the MTA/NYCTA Defendants and as well as punitive damages from Defendant Wood.

### SIXTH CAUSE OF ACTION: TORT
**Negligence**
**(Defendant City of New York, Defendant Castro, and "John Doe" Defendants #1-10)**

85. Mr. Guerrier realleges and incorporates by reference the allegations set forth in paragraphs 1 through 84 of this complaint.

86. Defendant Castro and "John Doe" Defendants #1-10 were negligent in the following respects:

   a. Failing to use the proper standard of care in stopping and questioning Mr. Guerrier; in investigating any alleged wrongdoing of Mr. Guerrier; in failing to

recognize that Mr. Guerrier posed no threat to them and should not have been subject to the above described treatment including handcuffing him to his hospital bed for 23 days;

b. Failing to use reasonable care, prudence and diligence in managing, caring for, and protecting Mr. Guerrier;

c. Failing to act with that degree of reasonable care and diligence that the circumstances then and there existing required, and which would have prevented the happening of the occurrence complained of herein;

d. Failing to timely arraign Mr. Guerrier or arrange for due process despite well-established procedures for hospital and bedside arraignments and court appearances.

87. Defendant City of New York was negligent in the following respects:

a. Failing to use the proper standard of care to prevent Defendant Castro and "John Doe" Defendants #1-10 from engaging in the activity described herein;

b. Failing to use reasonable care, prudence and diligence in managing, caring for, and protecting Mr. Guerrier while he was hospitalized in the Brooklyn Methodist Hospital and while in the custody of Defendant Castro and "John Doe" Defendants #1-10;

c. Failing to act with that degree of reasonable care and diligence that the circumstances then and there existing required, and which would have prevented the happening of the occurrence complained of herein;

a. Failing to timely arraign Mr. Guerrier or arrange for due process despite well-established procedures for hospital and bedside arraignments and court

15

appearances.

88. The injuries caused to Mr. Guerrier by handcuffing him to his hospital bed for 23 days were due solely to the negligence and carelessness of the City of New York Defendants.

89. Mr. Guerrier seeks compensatory damages from all City Defendants, as well as punitive damages from "John Doe" Defendants #1-10.

### SEVENTH CAUSE OF ACTION: TORT
**Assault and Battery**
**(Defendants MTA/NYCTA and Defendant Wood)**

90. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

91. Defendants' physical assault and battery of Mr. Guerrier, without his permission, were warrantless, unlawful, and not otherwise privileged.

92. Defendants' actions therefore constituted an assault and battery in violation of the law of the State of New York.

93. The aforesaid assault and battery were made possible, and were proximately caused by, the agency relationship between Defendant Wood and Defendants MTA/NYCTA, to wit, the employment of the Defendant Wood by Defendants MTA/NYCTA.

94. The aforesaid assault and battery occurred during, in furtherance of, and within the scope of the employment of Defendant Wood by Defendants MTA/NYCTA.

95. As a result of the aforesaid agency relationship, Defendant Wood's acts while within the employ of Defendants MTA/NYCTA, Defendants MTA/NYCTA are vicariously liable for the intentional tortious conduct of Defendant Wood, in that the MTA/NYCTA encouraged and/or otherwise fostered and/or allowed the assault and battery to be committed upon Mr. Guerrier by giving Defendant Wood the means and opportunity to perform such assault

and battery and/or allowing, creating and/or suffering an official policy or custom which made such assault and battery possible.

96. As a result of the foregoing, Mr. Guerrier sustained the damages and injuries previously described above, and seeks compensatory damages from all Defendants, as well as punitive damages from Defendant Wood.

**EIGHTH CAUSE OF ACTION: TORT**
**Assault and Battery**
**(Defendant Castro, "John Doe" Defendants #1-10, and Defendant City of New York)**

97. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 96 of this Complaint.

98. Defendants' physical assault and battery of Mr. Guerrier, without his permission, were warrantless, unlawful, and not otherwise privileged.

99. Defendants' actions therefore constituted an assault and battery in violation of the law of the State of New York.

100. The aforesaid assault and battery were made possible, and were proximately caused by, the agency relationship between the aforesaid individual Defendants and Defendant City of New York, to wit, the employment of the aforesaid individual Defendants by Defendant City of New York.

101. The aforesaid assault and battery occurred during, in furtherance of, and within the scope of the employment of the individual Defendants by Defendant City of New York.

102. As a result of the aforesaid agency relationship, and the aforesaid individual Defendants' acts while within the employ of the Defendant City of New York, Defendant City of New York is vicariously liable for the intentional tortious conduct of the individual Defendants, in that the City of New York encouraged and/or otherwise fostered and/or allowed

the assault and battery to be committed upon Mr. Guerrier by giving the individual Defendants the means and opportunity to perform such assault and battery and/or allowing, creating and/or suffering an official policy or custom which made such assault and battery possible.

103. As a result of the foregoing, Mr. Guerrier sustained the damages and injuries previously described above, and seeks compensatory damages from all Defendants, as well as punitive damages from all individual Defendants.

## JURY DEMAND

104. Mr. Guerrier respectfully demands that this proceeding be tried by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Guerrier prays for the following relief:

a. For a declaratory judgment under 28 U.S.C. § 2201 declaring that Defendants, separately and in concert, violated his constitutional rights;

b. For compensatory damages against all Defendants;

c. For punitive damages against the individual Defendants;

d. For attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

e. For such other relief as is just and proper.

DATED:    New York, New York
          November 3, 2023

Respectfully submitted,

THE LAW OFFICES OF EDWARD D. FRIEDMAN

By:   */s/ Edward D. Friedman, Esq.*
      26 Court Street, Suite 1903

        Brooklyn, NY 11242
        T: 718-852-8849


        MENKEN SIMPSON & ROZGER LLP

By:    */s/ Bruce E. Menken, Esq.*
        */s/ Raya F. Saksouk, Esq.*
        80 Pine Street, 33rd Floor
        New York, NY 10005
        T: 212-509-1616