# MENKEN SIMPSON & ROZGER LLP

80 PINE STREET, 33RD FLOOR
NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616
FACSIMILE: (212) 509-8088
WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
SCOTT SIMPSON
JASON J. ROZGER [△]
BRENNA RABINOWITZ
RAYA F. SAKSOUK

[△] ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

April 8, 2024

**BY ECF**
Hon. Hector Gonzalez, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Guerrier v. New York City Transit Auth., et al.*
                Case No. 1:23-cv-05517-HG

Dear Judge Gonzalez:

     This firm, along with the Law Offices of Edward D. Friedman, is counsel for Plaintiff Renaldo Guerrier in the above-captioned matter. Please accept this joint letter on behalf of all parties in compliance with Your Honor's April 2, 2024 Order.

### A. Expert Discovery and Documents Produced After April 29, 2024

     Pursuant to the Court's March 11, 2024 Order (granting Dkt. No. 51), the deadline for expert discovery has been extended to June 28, 2024.

     We respectfully request that the Court extend the expert discovery deadline to July 23, 2024 with the following interim deadlines: 1) May 22, 2024 as Plaintiff's deadline to produce expert reports; 2) June 21, 2024 as Defendants' deadline to produce expert reports; and 3) July 23, 2024 as all parties' deadline to conclude expert discovery including depositions.

     The parties also agree that any documents any party receives after the current fact discovery deadline of April 29, 2024 pursuant to a previously served subpoena may be proffered by either party as evidence at trial, and as long as that party produces such documents within a reasonable time after obtaining them, no other party will seek to preclude that evidence on the grounds of untimely disclosure.

B. **Plaintiff's Discovery Disputes with Defendant City**

Plaintiff has identified three outstanding discovery disputes with Defendant City. The parties (specifically, Bruce Menken and Evan Gottstein) met and conferred via email and telephone on April 8, 2024.

    1. Complete List of Police Officers Who Guarded and Shackled Plaintiff

**Plaintiff's Position:** The City has failed to provide Plaintiff with a complete list of the officers who guarded and shackled him at Brooklyn Methodist Hospital between December 20, 2022, and January 12, 2023. Instead, the City has identified approximately 20 officers who guarded and shackled Plaintiff (many of them "upon information and belief"). It has also produced various roll call reports and activity logs identifying Transit District 32 officers who were stationed to guard unnamed hospitalized prisoners during the applicable time period, *without* being able to confirm whether those officers guarded Plaintiff or someone else at Methodist Hospital or at a different hospital. As a compromise, Plaintiff has proposed that the City confirm and identify the names of the officers who guarded Plaintiff during the first five days of his hospitalization.

**City's Position:** To date, the City has identified 21 officers who guarded plaintiff at Brooklyn Methodist Hospital, based mostly on the details provided in the Transit District 32 ("TD 32") roll calls that were previously produced. *See* ECF No. 52 at 2. Therefore, on March 6th, given the high burden of continuing to investigate the rest of the approximately 40 officers who guarded plaintiff, and in light of the City's pending, fully dispositive motion to dismiss on this claim, the parties agreed that, in addition to the memobook entries that the City had already produced, the City would obtain and produce relevant memobook entries from <u>six</u> officers of plaintiff's selection. On March 7, 2024, plaintiff's counsel identified the six additional officers whose memobooks they sought, and the City produced those six officers' relevant memobook entries (which included 15 individual tours of duty and contained 94 pages in total) on April 5, 2024.

Based on the parties' agreement of March 6, 2024 on this issue, the City believed that the issue of identifying "John Doe" officers was fully resolved, until plaintiff's counsel indicated via email today at 11:36 a.m. that they were now insisting on the City confirming **all** of the approximately 40 officers who may have guarded plaintiff at some point between December 20, 2022, and January 12, 2023. Despite the parties' prior agreement to produce memobooks of six additional officers of plaintiff's selection, the City agrees to plaintiff's newly proposed compromise of continuing to investigate and will attempt to identify all officers who guarded plaintiff at the hospital during the first five days of his hospitalization. However, because plaintiff only just proposed this compromise this afternoon, the City would require at least an additional 30 days to produce this information to plaintiff. Plaintiff does not object to this request.

2. Documents Generated by Police Officer Defendants

**Plaintiff's Position:** Plaintiff has requested that the City produce any and all documents generated by NYPD officers in connection with Plaintiff and his 23-day hospitalization, including, *e.g.*, handwritten notes.[1] The City has not produced any responsive documents other than memo books/activity logs and roll call reports, which provide no information about what the officers did when guarding Plaintiff, nor has the City represented that it conducted a search and that no such documents exist. Such information will help the Plaintiff further identify if any "John Doe" is a witness and/or personally liable for violating his constitutional rights.

**City's Position:** The only responsive documents to these specific document requests that the City believes would exist are the TD 32 roll calls from the relevant dates, and the memobook entries of each individual officer who guarded plaintiff during that time. As explained above, the City already produced excerpts of all TD 32 roll calls that indicate all the officers who were assigned to a "Hospital" post between December 20, 2022, and January 12, 2023. Further, per the parties' previous agreement about producing memobooks, the City has produced nine officers' memobook entries from each date on which that officer guarded plaintiff at Brooklyn Methodist Hospital. Because the NYPD had implemented a fully electronic system for officers' daily activity records as of 2020, the City has no reason to believe that any officers also took any *handwritten* notes about their time guarding plaintiff at the hospital, and it would be unduly burdensome and disproportional to the needs of the case for counsel for the City to schedule meetings will all 40+ officers who may have guarded plaintiff at the hospital to inquire about the possibility of any handwritten notes, considering the extremely low, if any, value that any handwritten notes would add to the case, if they even exist.

3. Documents Sufficient to Establish Whether Police Officer Defendants Were Acting Pursuant to Policy or Protocol

**Plaintiff's Position:** On March 8, 2024, Plaintiff deposed Officer Mafhalda Fabien. Officer Fabien guarded and shackled Plaintiff in the hospital and is a potential defendant in this action. Officer Fabien testified that she acted pursuant to NYPD "protocol," which she learned "through the academy" and in the NYPD "patrol guide." Fabien Dep. Tr. 19:9-21:20. Though discovery regarding Plaintiff's *Monell* claims against the City has been stayed, it is Plaintiff's position that, to the extent the Police Officer Defendants claim they were "following orders," the substance of those orders must be produced. This information is critical for Plaintiff to establish whether individuals like Officer Fabien in fact acted pursuant to the orders given to them and in compliance with NYPD policy, or whether they deviated from policy and acted according to their own judgment and exposed themselves to personal liability. The City's offer to produce an excerpt from the NYPD Patrol Guide titled "Hospitalized Prisoners" that was in effect in December 2022 and January 2023 is not responsive to Plaintiff's request unless it is the "protocol" that Officer Fabien relied on. Otherwise, it is a throw-away, simply producing the

---

[1] RFP No. 34 requested: "Copies of any documents reflecting, referring or relating to any of the Police Officer Defendants' presence in Plaintiff's hospital room during the time period December 20, 2022 to January 12, 2023." RFP No. 29 requested: "All documents reflecting, referring or relating to the Police Officer Defendants' communication with any members of the NYPD, NYCTA, MTA, the Kings County District Attorney's Office or Methodist Hospital concerning Plaintiff."

same document – the Patrol Guide excerpt – that Plaintiff attached to his response to the City's motion to dismiss and included in his March 5, 2024 letter as just one example of the types of documents sought from Defendant City. Plaintiff does not know *what* documents the City possesses that dictate the "protocol" Officer Fabien followed, so any claim that Plaintiff should be able to precisely identify the document(s) he seeks should be ignored.

**City's Position:** Plaintiff improperly seeks to use the deposition testimony of Officer Fabien as a means to circumvent the Court's November 18, 2023 Order limiting the scope of discovery. Specifically, on November 18, 2023, the Court "stay[ed] all discovery related to Plaintiff's *Monell* claim against the City of New York while the City of New York's forthcoming motion to dismiss is pending, and Plaintiff shall not take a Rule 30(b)(6) deposition of a witness provided by the City of New York unless Plaintiff's claims against the City of New York survive that motion to dismiss." When the City served its objections and responses to plaintiff's first set of interrogatories and document requests on December 22, 2023, it properly objected to all requests concerning the City's/NYPD's policies regarding restraining hospitalized arrestees because "all discovery related to Plaintiff's *Monell* claim against the City" had been stayed. Despite the City timely raising this objection in December, plaintiff raised this dispute with the Court for the first time on March 5, 2024. *See* ECF No. 50. Plaintiff is now arguing that he is entitled to documents concerning NYPD policy because an officer (who is not even a party at this juncture) purportedly acted pursuant to NYPD policy. This is a quintessential issue for a *Monell* claim, and it is squarely within the ambit of the Court's stay of "all discovery related to Plaintiff's *Monell* claim." Further, the Court's November 18, 2023 Order provided that the parties "shall complete all other discovery, including discovery related to Plaintiff's claims against *Officer Castro*" (emphasis added). But whether Officer Fabien, a nonparty, acted pursuant to a certain policy when she guarded plaintiff is not relevant to any claim against Officer Castro.[2]

Nevertheless, in a good faith attempt to resolve this dispute without wasting the Court's time, when counsel for the parties conferred by telephone this afternoon, the City offered to obtain and produce (within 30 days) the section of the NYPD Patrol Guide titled "Hospitalized Prisoners" that was in effect in December 2022 and January 2023. Even though plaintiff's March 5, 2024 letter motion sought production of "the relevant portions of the NYC Police Department Patrol Guide," plaintiff's counsel refused the City's latest proposal and instead insisted that the City produce more than just the relevant Patrol Guide section during this phase of discovery, without specifying what additional documents he believes plaintiff is entitled to.

C. **The City's Discovery Dispute with Plaintiff**

**City's Position:** Additionally, a new dispute arose just this morning when plaintiff represented that he does not intend to respond to the City's supplemental discovery requests that were based on new information provided during plaintiff's deposition on March 13, 2024,

---

[2] Defendants also note that plaintiff cannot rely upon Officer Fabien's deposition testimony in making the instant request, as he has not provided the City or Officer Fabien with a copy of the deposition transcript for review and correction.

4

because he believed they were untimely.[3]  Plaintiff did represent, however, that he would respond to those requests if the City could provide case law that supported the requests.  The City sent plaintiff the requested case law this evening, but at approximately 9:30 p.m., plaintiff still insisted that the City raise this issue with the Court.   Accordingly, the City requests leave to file a joint letter regarding this dispute, including relevant materials attached as exhibits, by tomorrow, April 9, 2024.

**Plaintiff's Position:** The Plaintiff has read and understands the Court's recent ruling indicating that fact discovery shall close as of April 29, 2024. He also understands that the Court will extend fact discovery if the City's motion to dismiss is denied. Accordingly, as a courtesy and if acceptable to the Court, the Plaintiff will consent and agree to produce responses to any supplemental requests that were orally made at his March 13, 2024 deposition and followed up in writing on April 5, 2024. (*See* footnote 3 above). With this compromise proposal, Plaintiff believes there is no need to file another joint request tomorrow, April 9, 2024, as requested above by the City.

                                                Respectfully submitted,

                                                /s/

                                                Bruce E. Menken
                                                Raya F. Saksouk

cc: All Counsel of Record (via ECF)

---

[3] The City made most of these supplemental requests during the deposition on March 13, 2024, and followed up with a letter on April 5, 2024.