UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RENALDO GUERRIER,

        Plaintiff,

v.

THE CITY OF NEW YORK, *et al.*,

        Defendants.

**MEMORANDUM & ORDER**
23-CV-05517 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Renaldo Guerrier brings this Section 1983 action against Defendants the New York City Transit Authority ("NYCTA"), Metropolitan Transportation Authority ("MTA"), Michael Wood, the City of New York, Police Officer Ernesto Castro, and various "John Doe" NYPD officers. *See* ECF No. 28 ¶ 2 (Amended Complaint, "AC"). He alleges that he was shot by an MTA agent and that, while in the hospital for treatment, the NYPD shackled him to his bed for 23 days because he had an open warrant for failure to pay a ticket on an unrelated earlier crime. For the reasons explained herein, Plaintiff has plausibly alleged that the City violated his substantive due process rights as a pretrial detainee in the NYPD's custody, and that the City is also liable for assault and battery. Accordingly, the City's motion to dismiss is granted only as to Plaintiff's negligence claim, and is otherwise denied.

## BACKGROUND

Plaintiff alleges that while riding the subway on December 20, 2022, he engaged in conversation with two MTA employees: Revenue Collecting Agent Wood and Equipment Maintainer Liang Yingsheng. AC ¶¶ 2, 26, 33–34.[1] MTA revenue collection agents, who are

---

[1] The Court is "required to treat [the AC's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly

armed, guard the equipment maintainers responsible for the vending machines from which MTA customers purchase MetroCards. *Id.* ¶¶ 23–25. On the night in question, Plaintiff and the two MTA employees exited the train at Brooklyn's Union Street station and continued their conversation. *Id.* ¶¶ 34–35. Then, Defendant Wood shot Plaintiff in the chest. *Id.* ¶ 35. The AC does not allege any further facts about what precipitated the shooting, except to state that Plaintiff had no firearm, did not physically attack either of the MTA employees, and did not attempt to take Defendant Wood's gun, *id.* ¶¶ 36–38, all issues which Plaintiff says were "falsely claim[ed]" by Defendants at some point, *id.* ¶ 3. Plaintiff was never arrested for conduct connected to this incident. *Id.* ¶ 52.

Plaintiff was critically injured in the shooting and emergency medical personnel transported him to Brooklyn Methodist Hospital, where he underwent surgery for injuries to his liver and pancreas. *Id.* ¶¶ 41, 43–44. He remained in the hospital from that night, December 20, through January 12, 2023, "and was handcuffed or chained to his hospital bed by his arm and his leg for the duration." *Id.* ¶ 45. He was also "constantly guarded by one or more police officers for the duration of his hospital stay." *Id.* ¶ 47. He specifically alleges that on at least December 30, Defendant Police Officer Castro was "one of the police officers who handcuffed or chained [him] to his hospital bed and held him in custody." *Id.* ¶ 46. At this time, Plaintiff had an open warrant for failure to pay a fine for Driving While Intoxicated. *Id.* ¶ 48. After Plaintiff was released from the hospital on January 12, he returned there on January 23 and remained until January 28. *Id.* ¶ 49. During this second stay, he was not restrained. *Id.* ¶ 50.

---

supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court therefore "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as we have no way of knowing at this stage what are the true facts." *Id.* Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Plaintiff initiated this suit by filing a complaint on July 20, 2023. ECF No. 1. On September 21, 2023, the City filed a pre-motion conference letter in anticipation of a motion to dismiss, ECF No. 24, which Plaintiff responded to on September 28, 2023, ECF No. 25. The Court granted Plaintiff leave to amend the complaint, *see* Oct. 20, 2023, Text Order, and he filed the AC on November 3, 2023. On November 16, 2023, Defendants NYCTA, MTA, and Wood answered. ECF No. 33. On January 4, 2024, the City filed its motion. ECF No. 42 (Notice of Motion); ECF No. 43 (Memorandum of Law, "Mot."). On February 5, 2024, Plaintiff opposed. ECF No. 48 (Memorandum of Law, "Opp."); ECF No. 47 (Affidavit). On February 20, 2024, the City filed its reply. ECF No. 49 ("Reply").

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In addition to requiring sufficient factual matter to state a plausible claim for relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against the defendant so that it has adequate notice of the claims against it. *Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* To satisfy this standard, the AC must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the

plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

## DISCUSSION

Plaintiff brings three claims against the City. He seeks to hold it liable under Section 1983 for an alleged violation of his substantive due process rights pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). AC ¶¶ 73–79. He also brings state law tort claims, on a theory of *respondeat superior*, for negligence and for assault and battery. *Id.* ¶¶ 85–89, 97–104. Plaintiff's claims against the City are based on the conduct only of the NYPD and its employees.[2]

### I.     Section 1983 Claim Pursuant to *Monell*

Plaintiff alleges that the City "developed and maintained policies and customs which caused the deprivation of [Plaintiff]'s constitutional rights, to wit:  overinclusive policies or customs requiring the indiscriminate use of restraints against hospital detainees, AND/OR failure to train police officers . . . in how to secure, care for and process pretrial hospital detainees." *Id.* ¶ 74. "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). *Monell* "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). The City argues that Plaintiff has failed to adequately plead an independent constitutional

---

[2]     They could not be based on the conduct of the NYCTA, MTA, or Defendant Wood. *See Abdal-Rahim v. MTA N.Y.C. Transit*, No. 17-cv-7499, 2018 WL 6176217, at *6 (S.D.N.Y. Nov. 27, 2018) (explaining that the NYCTA is a subdivision of the MTA and that neither is a City agency), *report and recommendation adopted*, 2019 WL 549048 (S.D.N.Y. Feb. 10, 2019).

violation and that, even if he had, such violation was not caused by a municipal policy or custom. Mot. at 8–9. The City errs on both prongs.

### A. Constitutional Violation

Plaintiff brings his substantive due process claim under the Fourteenth Amendment. Opp. at 10. As a preliminary matter, that is the correct framework here. The City suggests that the Eighth Amendment, which applies to post-conviction prisoners, governs this case. Mot. at 9; *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Alternatively, it says that Plaintiff's status as a pretrial detainee or post-conviction prisoner was "not clear." Mot. at 9. However, the Court agrees with Plaintiff that he was a pretrial detainee. Opp. at 15. The City says Plaintiff was detained in the hospital because of the open warrant for failure to pay a fine. Mot. at 7. Thus, at the hospital, the police took custody of him for allegedly violating the terms of his prior sentence, a separate offense from the underlying DWI, and one which no Court had found him guilty of, and which, according to the City, he had not yet even appeared in Court on. *See id.* As several other courts in this Circuit have found, those facts place Plaintiff on the pretrial detainee side of the line, and the Fourteenth Amendment governs his claim. *See Brooks v. Westchester Cnty. Jail*, No. 19-cv-10901, 2021 WL 3292229, at *5 (S.D.N.Y. Aug. 2, 2021).

"Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[I]n assessing whether restrictions on pretrial detainees comport with substantive due process, a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). "Absent proof of intent to punish, that determination generally will turn on

5

whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." *Id.*

As an initial matter, Plaintiff pleads no facts to suggest that any Defendant acted with a "punitive intent." *See Washington v. Falco*, No. 20-cv-3009, 2021 WL 797658, at *5 (S.D.N.Y. Mar. 1, 2021). Much to the contrary, Plaintiff argues that the City "adopted a 'hands off' policy" with respect to the use of such restraints, which he says violated the rights of "New Yorkers" on the whole. AC ¶¶ 74, 77; *see Washington*, 2021 WL 797658, at *5 (dismissing conditions of confinement claim where the plaintiff failed to allege that he was targeted by the allegedly unconstitutional policies).

Plaintiff also fails to plead that restraining him was not "rationally related to a legitimate nonpunitive governmental purpose." *Wolfish*, 441 U.S. at 561. As the City correctly observes, Mot. at 10–11, the Supreme Court has recognized that "the Government may permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt" and that "the Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences." *Wolfish*, 441 U.S. at 534. On the allegations here, the legitimate, nonpunitive governmental purpose is clear. Plaintiff himself pleads that at the time he was restrained, he "had an open warrant for failure to pay a fine for Driving While Intoxicated/Impaired from two years earlier." AC ¶ 48. Thus, the Court is persuaded by the City's argument that restraining Plaintiff was rationally related to "the legitimate penological goal of preventing [detainees] awaiting trial from escaping . . . [the] less secure confines" of a hospital. Mot. at 11 (quoting *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997)).

Plaintiff's weightier argument is that the restraints were excessive under the circumstances because he (1) was a "weakened" hospital patient, Opp. at 11–12, (2) was "continuously guarded" by police, *id.* at 12, and (3) was restrained for 23 days, *id.* at 14.  All this, says Plaintiff, made "the odds of him escaping custody or posing a danger to anyone . . . extremely slim and remote."  *Id.* at 12.  Here, the Court must consider whether the shackling of Plaintiff was "excessively harsh," a standard which compares the restrictions to the Government's legitimate objectives in using them.  *See Allah*, 876 F.3d at 57 (citing *Wolfish*, 441 U.S. at 538).  Taking all well-pleaded allegations as true, as I must do here, Plaintiff plausibly alleges that 23 days of shackling in the hospital, after having been shot, and under the continuous supervision of the police, was "excessively harsh" in relation to his risk of flight evidenced only by an open warrant.³  *See May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) ("around the clock" shackling of pretrial detainee, who was an AIDS patient, and despite the "continuous presence of a guard," was unconstitutionally excessive in light of the proffered safety risk); *see also Sepulveda v. City of New York*, No. 15-cv-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (on motion to amend, allowing Fourteenth Amendment claim to proceed where "plaintiff claim[ed] that he was subjected to a cavity search and was held and handcuffed to a hospital bed for six days despite never being found to possess contraband and defendants never having [had]

---

³  On this issue, both sides overplay their hands.  Plaintiff's assertion that the fine was "steep" wrongly suggests that it excuses his failure to comply with a court order.  *See* Opp. at 14.  Relatedly, the City's categorical position that "the police are entitled to detain an individual who is subject to an open warrant, and may restrain him until he can be returned on the warrant"—including in the specific manner alleged in the AC—would lead to a troubling logical endpoint.  *See* Mot. at 11.  If a comatose car accident victim is rushed to the hospital for emergency surgery, it is hard to imagine that Due Process would countenance the police shackling her to her hospital bed because she had an open warrant for failure to pay a parking ticket from years earlier.  *See Persaud v. City of New York*, No. 22-cv-2919, 2024 WL 2159852, at *13 (S.D.N.Y. May 14, 2024) (in explicating Section 1983 liability pursuant to *Monell*, rejecting the argument that "so long as [the City] drew its policy broadly enough to sweep in some constitutional applications, it could never be held liable for unconstitutional acts that it caused").

probable cause to search him"), *report and recommendation adopted*, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

The City's contrary authority is not persuasive. It principally relies on *Haslar*, in which the Eighth Circuit found that a policy of shackling hospital detainees survived scrutiny under *Wolfish* because it "serve[d] the legitimate penological goal of preventing inmates awaiting trial from escaping [the hospital's] less secure confines" and was not excessive because "[a] single armed guard often cannot prevent a determined, unrestrained, and sometimes aggressive inmate from escaping without resorting to force." 104 F.3d at 180. The Court does not disagree with the City that such a rationale may be persuasive, but determines that it is too early to tell. *Haslar* affirmed a grant of summary judgment. *See id.* at 179. This Court recognizes that, once this case reaches that posture, the City may very well be able to put forward persuasive evidence that the restraints used on Plaintiff were not "excessively harsh," but on the facts as alleged, Plaintiff has sufficiently pleaded a substantive due process claim for the reasons explained above. *See Fusco v. Cnty. of Putnam*, No. 15-cv-08132, 2018 WL 1889070, at *7 (S.D.N.Y. Apr. 18, 2018) (denying motion to dismiss). More fundamentally, *Haslar* does not appear to have considered the application of the shackling policy to the "virtually comatose" detainee, 104 F.3d at 179–80, but binding Second Circuit precedent requires the Court to, in applying *Wolfish*, consider the particular circumstances of this case, *see Allah*, 876 F.3d at 58; *see also Persaud*, 2024 WL 2159852, at *13. The Court has done so and, at this early stage, concludes that Plaintiff has sufficiently alleged a constitutional violation.

      B.    *Policy or Custom*

Plaintiff also sufficiently pleads that a City policy caused his constitutional injury. There are four ways to demonstrate the existence of a policy or custom under *Monell*: "(1) a formal

policy; (2) actions or decisions taken by a municipal official with final policymaking authority; (3) a practice so consistent and widespread that it constitutes a custom or usage; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees." *Albert v. City of New York*, No. 17-cv-3957, 2018 WL 5084824, at *9 (E.D.N.Y. Oct. 18, 2018). Now, Plaintiff argues that the City followed an "indiscriminate shackling policy or custom." Opp. at 17; AC ¶ 74.[4] He plausibly alleges that the City maintains an official policy requiring the shackling of hospitalized detainees like himself.

To show a policy, Plaintiff primarily relies on the handcuffing policy in the NYPD's Patrol Guide.[5] The Patrol Guide provides that "[t]o prevent escape, leg restraints will be placed on ALL prisoners transported to a hospital for medical treatment." Opp. at 19 (quoting ECF No. 47-1 at 6 (Patrol Guide) (emphasis omitted)). Critically, it goes on to state that, "[i]n the event the prisoner must be placed in a hospital bed or on a gurney," the prisoner should be handcuffed and kept "under constant observation, even if . . . handcuffed to a hospital bed or gurney, to prevent escape at all times." *Id.* (citing ECF No. 47-1 at 7 (emphasis omitted)). The City's sole retort is that the Patrol Guide provides for some narrow deviations from the policy, Reply at 11, but that does nothing to alter the fact that the policy provides that the police must ordinarily shackle all hospitalized detainees, ECF No. 47-1 at 7. Here, those exceptions do not "sufficiently dilute[] the policy's role as the 'moving force' behind" Plaintiff's shackling. *See*

---

[4] Plaintiff concedes that the AC does not plausibly allege *Monell* liability on a failure-to-train or failure-to-supervise theory. Opp. at 10 n.2.

[5] Although the Patrol Guide is not cited in the AC, the City's effort to preclude the Court from considering it is halfhearted at best and ignores that a significant number of courts have taken judicial notice of that document in this posture. *See, e.g.*, *Griffin v. City of New York*, 880 F. Supp. 2d 384, 397 n.2 (E.D.N.Y. 2012); *Herman v. City of New York*, No. 15-cv-3059, 2022 WL 900592, at *13 n.14 (E.D.N.Y. Mar. 28, 2022). This Court will do the same.

9

*Persaud*, 2024 WL 2159852, at *9 (quoting *Monell*, 436 U.S. at 694). The Court also agrees with Plaintiff that the City's own position strongly suggests that the NYPD has a policy or custom of shackling hospitalized detainees. *See* Mot. at 7 (explaining that the NYPD shackled Plaintiff "[b]ecause [he] had an open bench warrant"). Thus, even if the City's policy is not facially unconstitutional, on the AC's precise facts, Plaintiff has plausibly alleged that the "execution of [the] government's policy or custom . . . inflict[ed] the injury" detailed above. *Monell*, 436 U.S. at 694; *see May*, 226 F.3d at 884 (explaining that "shackling all hospital detainees reduces the risk of a breach of security" but finding the application of such a policy "plainly excessive" on the facts of that case); *see also Allah*, 876 F.3d at 55–56 (explaining that "[i]n many cases, a pretrial detainee's placement in a restrictive housing status . . . may be determined to be reasonably related to legitimate governmental purposes," but finding a violation under *Wolfish* where prison officials made such an assignment without any "individualized assessment whatsoever of the risk that [the plaintiff] posed to institutional security").

In view of the foregoing, the City's motion to dismiss the Section 1983 claim is denied.

## II. State Law Claims

The City moves to dismiss Plaintiff's assault and battery claim and negligence claim, arguing that "[a] party may not recover on inconsistent theories of liability where the complaint only alleges facts to support one theory of liability." Mot. at 15–17. Plaintiff is right to observe that he is entitled to plead alternative theories of liability. Opp. at 22. And although he pleads several sets of facts in support of his negligence claim in the AC, AC ¶¶ 87–89, Plaintiff narrows his negligence claim in opposition such that it now runs together with his constitutional claim. *See* Opp. at 21–22. However, "[t]o the extent Plaintiff is seeking relief for any alleged constitutional violations, [he] cannot sustain a negligence claim for deprivation of constitutional

rights" because "[a] claim that a state actor acted negligently does not state a deprivation of constitutional rights." *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) (quoting *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996)). Because the narrowed factual allegations are "only consistent with a theory of intentional, or perhaps reckless, conduct," [the] negligence claim[] must be dismissed" as to the City. *Id.* The negligence claim against the City is therefore dismissed with prejudice.

On the other hand, Plaintiff has stated a claim for the intentional torts of assault and battery. "Under New York law, civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact" and "[c]ivil battery is an intentional wrongful physical contact with another person without consent." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021). These elements are "substantially identical" to a Section 1983 excessive force claim. *Id.* When a pretrial detainee asserts an excessive force claim, the Court must again look to *Wolfish* to determine if the excessive force "amounts to punishment." *Frost v. NYPD*, 980 F.3d 231, 251–52 (2d Cir. 2020). Because the Court has already concluded that Plaintiff plausibly alleged that he was punished with the use of physical restraints, he has necessarily plausibly alleged an assault and battery claim based on the same facts. *Cf. Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 311 (N.D.N.Y. Mar. 16, 2023) (assault and battery claims survived motion to dismiss where the plaintiffs had stated a Fourth Amendment excessive force claim); *Al-Anesi v. City of New York*, No. 18-cv-8439, 2022 WL 1948879, at *9 (S.D.N.Y. June 6, 2022) (similar on summary judgment).

## **CONCLUSION**

For the reasons explained herein, the City's motion to dismiss is granted as to Plaintiff's state law negligence claim but denied as to Plaintiff's Section 1983 claim and state law assault

11

and battery claim.  The Court previously stayed discovery with respect to Plaintiff's *Monell* claim.  *See* Nov. 18, 2023, Text Order.  Consistent with the Court's prior Order, that stay is now lifted.  *See* Apr. 5, 2024, Text Order.  The parties shall complete additional fact discovery by October 15, 2024.  They may simultaneously conduct expert discovery, which is currently ongoing, during this time.  On or before October 8, 2024, the parties shall file a joint letter indicating whether any additional expert discovery is necessary.

    SO ORDERED.

                                                          */s/ Hector Gonzalez*
                                                          HECTOR GONZALEZ
                                                          United States District Judge

Dated: Brooklyn, New York
       August 16, 2024