# MENKEN SIMPSON & ROZGER LLP

80 PINE STREET, 33RD FLOOR
NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616
FACSIMILE: (212) 509-8088
WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
SCOTT SIMPSON
JASON J. ROZGER ᐃ
BRENNA RABINOWITZ
RAYA F. SAKSOUK

ᐃ ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

November 22, 2024

**BY ECF**
Hon. Hector Gonzalez, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Guerrier v. New York City Transit Auth., et al.,* No. 23 Civ. 05517 (HG)

Dear Judge Gonzalez:

    This firm, along with the Law Offices of Edward D. Friedman, is counsel for Plaintiff Renaldo Guerrier in the above-captioned matter. Please accept this joint letter on behalf of Plaintiff and the City of New York concerning several current discovery disputes. Plaintiff identifies three issues. Defendant City identifies three additional issues.[1]

## Supplemental Production

    **The Parties' Position**: Following the Court's August 16, 2024 decision denying in part and granting in part the City's motion to dismiss and permitting the Plaintiff to engage in more expanded *Monell* discovery, Plaintiff, on August 27, served an expanded set of discovery requests and a Rule 30(b)(6) deposition notice on the City for an October 10 deposition. Plaintiff consented to the City's multiple requests for additional time to respond. The City served its responses to Plaintiff's Second Set of Requests for Documents (RFP's) on October 19 and its responses to Plaintiff's Second Set of Interrogatories on October 28. The undersigned met and conferred via telephone with Assistant Corp Counsel Evan Gottstein on November 4 and 5, and an agreement was reached where the City agreed to promptly produce command logs and various memo book entries. Although there have been some delays since November 5, the parties met and conferred yesterday and today and have reached an agreement where the City has agreed to produce all relevant command logs no later than Monday, November 25, and Plaintiff has agreed to accept production of 22 memo book entries from the remaining officers for whom there is record evidence indicating that those officers were assigned to monitor plaintiff by December 2, 2024.

---

[1] The MTA Defendants have no involvement in and take no position on any of the discovery disputes identified in this letter.

1

## Rule 30(b)(6) Deposition

**Plaintiff's Position**: Mr. Gottstein emailed me on September 24, 27 days after Plaintiff served his 30(b)(6) notice, to meet and confer about its scope.[2] I promptly responded that day and asked him to email me and my colleagues his concerns about the notice. No formal objection to the notice was served by the City. Six days elapsed and, because I had not heard from the City, I emailed Mr. Gottstein and asked if he was sick or if something was wrong. On October 4, my colleague and I met and conferred with Mr. Gottstein and, among other things, he sought an extension to respond to Plaintiff's discovery requests and briefly discussed the scope of Plaintiff's 30(b)(6) notice. I expressly stated that Plaintiff may need to conduct additional depositions, beyond the 30(b)(6) witness, but needed to review the documents the City was going to produce and conduct the 30(b)(6) deposition first. Finally, at my urging, on October 7 Mr. Gottstein finally acknowledged the City was not going to produce a 30(b)(6) witness on October 10, as noticed.

On October 14, I reminded the City that it had yet to designate or produce a Rule 30(b)(6) witness and expressly wrote that the (eventual and then delinquent) production of the City's responsive documents would likely not limit the scope of the 30(b)(6) deposition. I also wrote that it was likely Plaintiff would want/need to depose other witnesses after the 30(b)(6). On October 30, I again emailed Mr. Gottstein and asked him to designate and identify a Rule 30b6 witness and to discuss deposition dates.

Following up on the November 4 and 5 meet and confer sessions (where Mr. Gottstein finally and tentatively designated Jason Saturnin as the City's 30(b)(6) witness), I emailed Mr. Gottstein on November 7 and, among other things, asked him to "confirm the Rule 30(b)(6) deposition for November 22 or 25." The parties agreed to do the 30(b)(6) deposition on November 22 but on November 12, Mr. Gottstein said it was "not going to work." In response to my November 14 email asking for the umpteenth time to conduct the 30(b)(6), the parties discussed December 4, but Mr. Gottstein said he could only do it on December 3, 5 or 6. Rather than provide Plaintiff with a formal objection or a written alternative scope of the 30(b)(6), the City has used Mr. Gottstein's periodic claims that "we have to discuss the scope" to avoid producing its witness. On November 19, in a last-ditch effort and abandoning his never-articulated "scope" argument, Mr. Gottstein emailed to ask if Plaintiff was "amenable to withdrawing the notice of 30(b)(6) deposition and having the City produce a declaration in lieu of the deposition." Plaintiff immediately objected and proposed to conduct the 30(b)(6) on December 3, 5 or 6. On the following day, Mr. Gottstein revived his "scope" issue and said he would email a proposed scope that afternoon. Mr. Gottstein and I spoke again on November 21 and spent at least 20 minutes going over and agreeing to several edits to the 30(b)(6) scope. At the end of the call, he agreed to provide me a draft of the edited 30(b)(6) scope today by 1:00 p.m. Instead, he postponed our scheduled 1:00 p.m. call, called me at 3:40 pm to say that the City's position had changed, and, at 5:03 p.m., sent me a draft of the City's portion of this letter indicating for the first time it would be moving for the below described protective order.

Producing a lawyer-drafted Declaration in lieu of a live witness prevents Plaintiff from asking probative questions and frustrates the discovery process. Multiple federal courts have

---

[2] A copy of the August 27, 2024 Rule 30(b)(6) deposition notice is attached as Exhibit A.

recognized this to be the case. *See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19CIV9193PGGSLC, 2023 WL 5498962, at *5 (S.D.N.Y. Aug. 25, 2023) (citing, *inter alia*, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 20. Misc. 65 (MCR) (GRJ), 2020 WL 6438614, at *4 (N.D. Fla. Nov. 2, 2020) ("Put simply, '[a] declaration is ... not an adequate substitute for live testimony, such as a deposition.'")); *Oakley v. MSG Networks, Inc.*, No. 17-CV-6903 (RJS), 2024 WL 3758798, at *3 (S.D.N.Y. Aug. 12, 2024) ("Among the reasons for this preference is the need for follow-up, observation of a prospective witness's demeanor, and avoidance of receiving pre-prepared answers so carefully tailored that they are likely to generate additional discovery disputes.") (internal quotation marks omitted).

Additionally, the City fails to specify (and indeed cannot specify) how the noticed deposition topics are unclear. Each topic seeks testimony on specific policies, practices, and customs of the NYPD. These are precisely the kinds of topics 30(b)(6) depositions are intended to cover. *See, e.g., Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18CV4476LJLJW, 2023 WL 8804257, at *8 (S.D.N.Y. Dec. 20, 2023) (permitting plaintiffs to depose 30(b)(6) witness on how "the City's specific guidelines ... are generally applied in the FDNY" and "to answer questions on the City's official positions on absence and tardiness policies in the FDNY"). They are also a far cry from the vague and over-inclusive notices rejected in the two cases cited by the City below. *See generally Seliger v. Breitbart News Network, LLC*, No. 20 CIV. 2860 (ER), 2021 WL 707063, at *1–2 (S.D.N.Y. Feb. 22, 2021), and *Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018). Case in point: the City can and has designated a witness, Jason Saturnin, who is prepared to testify about them.

Finally, the fact that the City produced documents addressing these policies does not justify denying Plaintiff the opportunity to depose a live witness. In addition to the fact that Plaintiff seeks testimony about actual *practices*—i.e., whether the written policy is implemented on the ground exactly as written, and is therefore a genuine reflection of NYPD policy[3]—"a party should not be prevented from questioning a live corporate witness in a deposition setting just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered." *Klosin v. E.I. Du Pont De Nemours & Co.*, No. 1:19-cv-00109 (EAW) (MJR), 2023 WL 1097859, at *4 (W.D.N.Y. Jan. 30, 2023) (quoting *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010)). The opportunity to depose a live witness is essential to "probe the veracity and contours" of the documents produced, *In re 3M*, 2020 WL 6438614, at *4, and to understand "the interpretation of ... and 'any underlying factual qualifiers of those documents' (i.e. information which the defendant knows but is not apparent on the face of the documents)." *Dongguk*, 270 F.R.D. at 74. Plaintiff therefore seeks an order compelling the City to produce its witness on December 3, 5 or 6. (Mr. Gottstein has advised me that he is presently very busy and, in light of this, Plaintiff does not object to any request the City makes for a short extension of fact discovery).

---

[3] The Court seemed to acknowledge the relevance of this point (the policy's execution) in its August 16, 2024 decision and order. *See* ECF No. 59 at 10 ("Thus, even if the City's policy is not facially unconstitutional, on the AC's precise facts, Plaintiff has plausibly alleged that the 'execution of [the] government's policy or custom ... inflict[ed] the injury' detailed above.").

**Defendant City's Position**: At the outset, Plaintiff's proposed Rule 30(b)(6) deposition is needlessly duplicative of several documents the City has produced regarding relevant policies in this case and is an inefficient and wasteful use of time and resources. Nevertheless, the City has continuously attempted in good faith to reach a reasonable compromise about the scope of the deposition so that we could avoid seeking the Court's intervention. Because the parties could not reach a reasonable agreement to date, we are now unable to complete the 30(b)(6) deposition by December 9 (for several reasons unrelated to counsel for the City's work schedule, i.e., insufficient time to prepare the designee).

Plaintiff provides only a selective, misleading portion of the procedural history of this dispute. When counsel met and conferred on October 4, 2024, counsel for the City proposed that plaintiff withdraw the notice of 30(b)(6) deposition because the City's production of NYPD policy documents would sufficiently address all of the subjects that plaintiff had listed in his notice of deposition. Plaintiff's counsel said that they would consider such withdrawal after receiving those policy documents from the City. The City then produced those policy documents on October 11 and sought to "confer ASAP about whether any of these documents would obviate the need for a 30(b)(6) deposition on these policies or at least obviate the need for some of the topics listed in the 30(b)(6) notice." Plaintiff's counsel did not provide availability to meet and confer until nearly a month later on October 31, and the parties scheduled a phone call for November 1. On November 1, plaintiff's counsel postponed that call and we rescheduled for November 4 and 5. During the November 5 call, counsel for the City again asked if plaintiff would agree to withdraw the notice of 30(b)(6) deposition because the policy documents produced on October 11 obviated the need for a deposition on the same subjects, but plaintiff indicated that he still intended to proceed with a deposition, and also refused to withdraw any topics for the deposition that were already sufficiently addressed in the City's document production. In that call, the City identified its 30(b)(6) witness. Counsel for the City also sought clarification of some ambiguous language and irrelevant topics in the notice, but plaintiff's counsel did not agree to any reasonable agreements about clarity of the notice, instead suggesting that we "see what the witness says" before determining whether he would seek any follow-up 30(b)(6) deposition, and stated that he had to end the call due to another scheduled meeting or call. On November 12, the City informed plaintiff that we still needed to agree on the scope of the deposition rather than "see what the witness says" based on the vague wording of the notice. However, the City required some clarification of some of plaintiff's vaguely worded topics in his notice before it could propose clearer, alternative language on those issues. The parties discussed the scope of the 30(b)(6) deposition again yesterday.

Defendants seek a protective order with respect to plaintiff's 30(b)(6) deposition under Rule 26(b)(1), Rule 26(b)(2), and Rule 26(c)(1). A party "may move for a protective order under Fed. R. Civ. P. 26(c)(1) 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]'" *Seliger v. Breitbart News Network, LLC*, No. 20-CV-2860 (ER), 2021 U.S. Dist. LEXIS 33325, at *3 (S.D.N.Y. Feb. 22, 2021) (quoting Fed. R. Civ. P. 26(c)(1)) (emphasis added). Courts in this Circuit commonly grant requests for protective orders regarding 30(b)(6) witness testimony where the notices are overbroad or do not request information with reasonable particularity. *See, e.g.*, *Seliger*, 2021 U.S. Dist. LEXIS 33325, at *7–10 (granting protective order excusing party from producing 30(b)(6) witness as to noticed topics deemed irrelevant, vague, overbroad, and which failed to request information with "reasonable particularity"); *Fort Worth Emp. Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-

CV-3701 (JPO) (JCF), 2013 U.S. Dist. LEXIS 173006, at *10–11 (S.D.N.Y. Dec. 9, 2013) (excusing defendants from producing 30(b)(6) witness regarding deposition topic that was "all-encompassing and fatally vague," and limiting scope of other topics deemed "overly broad"). Here, despite the Court actually limiting the scope of plaintiff's viable *Monell* claim against the City,[4] plaintiff's 30(b)(6) notice was overbroad, impermissibly vague, irrelevant and failed to request information with "reasonable particularity." Further, all information that plaintiff broadly lists in the 30(b)(6) notice is already addressed in the policy documents the City produced, and therefore the 30(b)(6) deposition would be needlessly duplicative and an inefficient use of resources. As such, defendants request that the Court grant a protective over excusing the City from producing a 30(b)(6) witness.

## Additional Depositions

**The Parties' Position:** Although the above Rule 30(b)(6) deposition, if permitted to proceed, would be the tenth deposition Plaintiff conducts in this case, after a number of meet and confer sessions, the City has stipulated to half-day depositions of nonparties (Ret.) Lieutenant Podber and Sergeant Konovitch pursuant to Rule 30(a)(2)(A)(i). Again, Plaintiff is prepared to conduct these two depositions before the present December 9, 2024 discovery deadline, but will also consent if the City seeks a brief extension for a limited purpose.

## Defendant City's Motion to Compel

Defendant City also respectfully moves for an order compelling plaintiff to produce: (1) properly executed HIPAA releases allowing counsel for the City to obtain plaintiff's medical records and discuss them with his providers; (2) documentation of plaintiff's purported enrollment in and completion of a Treatment Alternatives for Safer Communities (TASC) program as part of his prior DWI sentence; and (3) native files of photographs that were taken of plaintiff in the hospital.

**City's Position:** As the parties explained in their joint April 8, 2024 letter regarding outstanding discovery disputes, the City made several calls for production during plaintiff's March 13, 2024 deposition and confirmed those requests in writing on April 5, 2024. These requests sought, *inter alia*, production of (1) properly executed HIPAA releases allowing the City to obtain plaintiff's medical records; (2) documentation of a counseling program that plaintiff testified to completing as part of his 2020 sentence for DWI (the same case from which the bench warrant at issue in this case stemmed); and (3) native files of photographs that plaintiff claims were taken of him in the hospital following the shooting at issue in this case. Although

---

[4] Additionally, plaintiff is not entitled to *Monell* discovery on "actual practices" (as separate from policies) as he describes above, because he failed to plead a "widespread practice" theory of *Monell* in the Amended Complaint. *See*, *e.g.*, Freudenberg v. Cnty. of Orange, No. 23-CV-847 (KMK), 2024 U.S. Dist. LEXIS 175739, at *29 (S.D.N.Y. Sept. 25, 2024 ("A practice can constitute a custom under *Monell* when the practice is persistent and widespread, or permanent and well settled as to constitute a custom or usage with the force of law and to imply the constructive knowledge of policymaking officials."). Plaintiff did not plead this theory of *Monell* liability, and the Court specifically held that his *Monell* claim could proceed because it sufficiently pled an *official* policy, based on the NYPD Patrol Guide. *See* Memorandum & Order, dated August 16, 2024, at 9-10, ECF No. 59. Plaintiff cannot now use discovery to conduct a fishing expedition of new theories of liability which he failed to allege in the operative pleading.

5

plaintiff first stated that he would not respond to those requests, he then agreed to produce such responses. *See* ECF No. 55 at 5. The Court then ordered plaintiff to "abide by his commitment to produce responses" to those requests. However, plaintiff did not produce responses as he agreed by the then-close of fact discovery on April 29. On June 11, the City asked plaintiff when he intended to produce his responses that he represented to the Court he would produce. On June 12, plaintiff asked the City to resend those requests, which were resent on June 14. Having received no response, the City again followed up on August 20 and again on August 21. Later on August 21, plaintiff responded via email in three sentences, asserting, *inter alia*, that he would not produce any additional documents in response to the City's requests. On August 28, the City informed plaintiff that he needed to provide formal written responses to those discovery requests, and also explained why certain requested documents were relevant and not duplicative of documents already produced. Plaintiff did not serve formal responses until September 26, more than six months after the City made these requests during plaintiff's deposition. The parties have met and conferred several times since then and have resolved a number of these issues; however, given the December 9 discovery deadline, the City requires the Court's intervention to ensure plaintiff's compliance. The City's requests are annexed as Exhibit C.

**Plaintiff's Position:** See below.

## HIPAA Releases

**City's Position:** Despite the case management plan in this case required plaintiff to provide duly executed HIPAA releases to all defendants by September 29, 2023, plaintiff has failed to provide the City with executed HIPAA releases to date. These releases are necessary to allow counsel for the City to discuss plaintiff's medical records with his providers. On November 18, 2024, plaintiff finally agreed to produce these signed releases for the City but requested that the City again send him the releases to be signed (even though the City had provided blank releases several times in the last 15 months). Yesterday, plaintiff indicated that he would provide these signed releases "as soon as possible" without committing to a date certain. Given plaintiff's over a year delay in providing these releases and the approaching December 9 discovery deadline, the City respectfully requests that the Court order plaintiff to provide all properly executed HIPAA releases to the City no later than November 26, 2024.

**Plaintiff's Position**: Plaintiff maintains his objection that the City's sought-after HIPAA releases are overbroad and seek information that is totally irrelevant to his shackling claims. Plaintiff's claims against the City are inherently limited to a 23-day period, and yet the City has requested medical releases spanning from 2017 to the present day. Additionally, Plaintiff has already provided multiple HIPAA releases to Transit, and Transit has received and produced thousands of pages of medical records that are responsive to the City's request. Notwithstanding these objections, Plaintiff fully intends to provide the requested releases as soon as practicable.

## TASC Program Documents

**City's Position:** Plaintiff testified in his deposition that as part of his 2020 DWI conviction, he was sentenced to complete a counseling program for alcohol abuse. He also testified that he completed that program, which he called "TASC," seemingly suggesting that he had completed his sentence for the DWI conviction. However, when plaintiff failed to make

6

several post-conviction court appearances to confirm compliance with that sentence, the criminal court issued a bench warrant for his arrest and return to court. That is the bench warrant that plaintiff alleges caused him to be detained by police while he was in the hospital and handcuffed to his hospital bed. Defendants requested production of any documents concerning the "TASC" program that plaintiff supposedly completed as part of his conviction, and plaintiff responded that he did not have any such documents in his possession and that the requested records were irrelevant. Even if those documents may not be kept by plaintiff himself, they are still within his "control" for purposes of Rule 34, as he is best positioned to obtain his own records of completing such a program. After meeting and conferring, plaintiff confirmed that he did not actually make any reasonable efforts to obtain such documentation directly from the entity that offered the TASC program that he supposedly completed. These documents are relevant to this case because they relate directly to plaintiff's claim against the City based on being detained and handcuffed based on an open bench warrant that was issued in that same criminal case. They are also relevant to plaintiff's credibility, especially if it turns out that there is in fact no record of plaintiff completing such counseling program. Plaintiff's offer to provide a release for the City to subpoena the records on its own is unreasonable because it would needless force a less efficient way of obtaining the records, only plaintiff would know the specific public or private entity that offered the program he supposedly completed, and it improperly shifts the burden of production to the City for documents that are within *plaintiff's* control. Therefore, the City respectfully requests that plaintiff produce these documents, or a certified letter from the entity who offered the TASC program confirming that there is no record of completing such program, no later than December 9, 2024.

**Plaintiff's Position:** Plaintiff again objects to the relevance of documents concerning any involvement he had with the TASC program. Plaintiff does not dispute that there was an outstanding bench warrant for his failure to appear in court when he was shot by Defendant Wood and shackled to his hospital bed in violation of his constitutional rights and New York common law. Accordingly, the City's request to ask Plaintiff to obtain irrelevant documents concerning an immaterial issue is unjustified. Notwithstanding this objection, Plaintiff reiterates that he does not have possession of any documents concerning the TASC program and objects to the City's request to have him go to the TASC office to obtain them for the City.

### Native Files of Original Photographs

**City's Position:** Last, plaintiff testified in his deposition that family members were allowed to visit him while he was detained in the hospital, and that his cousin Jason took several photographs of him in his hospital bed during a visit. All defendants requested production of any photographs that were taken of plaintiff while he was in the hospital, and the City specifically requested production of these photographs in their native file format, with all metadata preserved. That metadata is important because it should indicate the exact date and time when each photograph was taken.[5] However, plaintiff initially only produced PDF versions of these photographs. After the City met and conferred with plaintiff about this, plaintiff eventually

---

[5] Confirming the date and time each photograph was taken is also important because plaintiff also testified that he has been treated at hospitals for gunshot wounds and stabbing on multiple occasions separate from the December 20, 2022 shooting that is at issue in this case. Of course, statements of counsel (who did not observe the photographs being taken) via email regarding who took a photograph and when they took it does not carry the same authentication reliability as original metadata does.

produced .jpg files of the photographs on November 18, but the files did not contain original metadata. Plaintiff also indicated on November 18 that the photographs produced were supposedly taken by and recovered from plaintiff's sister, not his cousin Jason as plaintiff had testified in his deposition. The City then requested that plaintiff confirm in writing whether plaintiff's cousin actually took and maintained any responsive photographs, and to obtain the original photographs from plaintiff's sister so that they could be produced in their native file format with relevant metadata preserved. Plaintiff's counsel indicated that "if we could get the originals we will produce them." Given that the City stated their request to produce *native* files of these photographs *including all metadata* as early as April 5, plaintiff should have already sought to obtain the native files from plaintiff's sister (and confirmed whether his cousin Jason had any additional photographs) several months ago. Accordingly, the City also respectfully requests that the Court order plaintiff to produce all photographs taken of plaintiff in Brooklyn Methodist Hospital at any time between December 20, 2022 and January 12, 2023, in their native file formats with all metadata preserved, no later than December 9, 2024.

**Plaintiff's Position:** The City's request is moot. As communicated to the City by email on November 18, 2024, Plaintiff's sister (who took the photo) visited him in the hospital on one and only one occasion, on December 25, 2020. This is reflected in documents produced by the City, including at least one memo book and a signed form which Plaintiff's sister was required to sign in order to visit him. There is no live dispute regarding the date the photo was taken. As for the specific time the photo was taken, the City fails to explain how or why that information is relevant. Notwithstanding this objection, Plaintiff has made and will continue to make efforts to obtain the original photographs he previously produced in pdf format.

***

The parties thank the Court for its time and attention.

Sincerely,

/s/

Bruce E. Menken

cc: All Counsel (via ECF)

8